2007 OK 5

**BOSTON AVENUE MANAGEMENT, INC., Plaintiff/Appellee,**

and

**Office Design, Inc., Plaintiff,**

v.

**ASSOCIATED RESOURCES, INC., Defendant/Appellant.**

No. 100,009.

Supreme Court of Oklahoma.

Jan. 30, 2007.

As Corrected Feb. 14, 2007.

James L. Kincaid of Crowe & Dunlevy, Tulsa, OK, for Plaintiff/Appellee.

Stephen R. McNamara and Brian Gaskill, Sneed Lang, P.C., Tulsa, OK, for Defendant/Appellant.

LAVENDER, J.

¶1 We decide in this case whether the Court of Civil Appeals (COCA), Division III erred in reversing a trial court order denying Defendant/Appellant, Associated Resources, Inc.'s (Associated) motion for attorney fees and costs against Plaintiff/Appellee, Boston Avenue Management, Inc. (Boston) and re-

manding for determination of an award of attorney fees to Associated. The COCA's decision relied on 12 O.S. § 1101.1 as authority for the attorney fee award. Section 1101.1 concerns offers of judgment, counter offers of judgment and the effect thereof on the propriety of the recovery of litigation costs and attorney fees in certain civil actions and in certain circumstances. We hold the COCA erred and that § 1101.1 does not authorize an award of attorney fees or costs to Associated against Boston. The COCA's opinion is vacated and the trial court order denying attorney fees and costs to Associated is affirmed.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶2 Boston sued Associated for monetary relief for allegedly failing to pay the proper holdover rent required by two lease agreements. Associated filed an Offer of Judgment (hereafter Offer) pursuant to § 1101.1(B). The Offer sets forth in pertinent part that Associated "offers to allow judgment to be taken against it for the amount of $3,934.24." Boston did not accept the Offer.

¶3 Thereafter, Boston filed a First Amended Petition against Associated containing two counts.[2] Basically, each count concerned a separate lease and alleged Plaintiff, Office Design, Inc. (Office Design), as landlord, entered the lease agreements with Associated, as tenant. The First Amended Petition alleged that subsequent to execution of the leases Boston purchased the leased premises and assumed the role of landlord. Each count essentially alleged the respective

lease involved had a "holding over" clause, that Associated remained in possession of the premises after expiration of the terms of the leases for certain periods of time, but failed to pay the holdover rent for such periods required to be paid by the terms of each lease. Count I sought $14,897.25, plus attorney fees, costs and other proper relief; count II sought $3,834.24, plus attorney fees, costs and other proper relief.

¶4 Associated moved for "summary judgment," asserting Boston was not the real party in interest to bring the suit. Associated's "summary judgment" motion was sustained **solely** on the basis Boston was not the real party in interest to sue under the leases (apparently because Boston had not received a valid assignment of the leases from Office Design) and the "summary judgment" order **ostensibly** dismissed with prejudice Boston's causes of action against Associated on that basis. However, obviously in an attempt to comply with 12 O.S.2001, § 2017 (A), the dismissal was entered **without prejudice** to the right of Office Design to intervene to assert any causes of action previously asserted by Boston. Section 2017(A) provides in part that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest...." The real party in interest "summary judgment" ruling was made by a different trial judge than the judge that denied Associated's motion for attorney fees and costs. The appellate record does not contain the parties' trial court "summary judgment" submissions, but does

---

1. The opinion of the Court of Civil Appeals (COCA), Division III reversed the trial court order denying attorney fees and costs, but the literal language on page 6 of the COCA's opinion remanded **only** for determination of an attorney fee award. The COCA's opinion did so although it was recognized therein that the trial court motion of Defendant/Appellant, Associated Resources, Inc. (Associated) sought **both** attorney fees and costs against Plaintiff/Appellee, Boston Avenue Management, Inc. (Boston). For two main reasons we do not deem it necessary to resolve here the reason behind the remand for attorney fees only, i.e., whether it was the result of some type of simple mistake in the COCA's opinion or some other reason. One, on page 3 of

the May 2005 Petition for Certiorari, etc., filed by Boston, purportedly joined by Plaintiff, Office Design, Inc. (Office Design), Boston appears to interpret the COCA's opinion as remanding for determination of an award of both attorney fees and costs to Associated. Two, in that we decide the COCA erred and that 12 O.S. § 1101.1 (B) does not support an award of either attorney fees or costs to Associated against Boston, resolution of the reason would merely be an academic exercise.

2. Boston's initial Petition filed against Associated is not contained in the record on appeal.

contain the "summary judgment" order, entitled Journal Entry of Judgment.

¶ 5 Office Design intervened and filed a Second Amended Petition that Associated concedes on appeal asserted the same causes of action against Associated as previously asserted by Boston.[3] Although Boston is listed in the caption of the Second Amended Petition as a plaintiff, Boston is **not** mentioned in the body thereof.

¶ 6 Next, as pertinent here, Associated filed a motion for attorney fees and costs against Boston, citing § 1101.1(B) as support. Essentially, Associated argued § 1101.1(B) allowed it to recover attorney fees and costs against Boston because Boston did not recover a favorable judgment against Associated in any amount. Basically, Associated relied on the provisions of § 1101.1(B)(3) that provide:

> If no offer of judgment or counteroffer of judgment is accepted and the judgment awarded the plaintiff is less than one or more offers of judgment, the defendant shall be entitled to reasonable litigation costs and reasonable attorney fees incurred by the defendant with respect to the action or the claim or claims included in the offer of judgment from and after the date of the first offer of judgment which is greater than the judgment until the date of the judgment. Such fees and costs may be offset from the judgment entered against the offering defendant.

¶ 7 Prior to the trial court's ruling on Associated's motion for attorney fees and costs, Office Design (purportedly joined by Boston) filed a dismissal without prejudice of the suit. After supplemental and responsive submissions and oral argument regarding Associated's quest for attorney fees and costs, the trial court denied Associated's motion for attorney fees and costs. One basis for the trial court's denial was, in effect, a realization § 1101.1 was not applicable because the "summary judgment" ruling in favor of Associated and against Boston on the real party in interest issue was not an actual adjudication of the causes of action brought against Associated and was not a judgment within the contemplation of § 1101.1. In other words, the same claims or causes of action initiated by Boston against Associated were allowed to continue through Office Design's intervention or substitution as the real party in interest plaintiff. Associated appealed the denial.[4]

¶ 8 The COCA, one judge dissenting, concluded that § 1101.1 did provide a statutory basis for an attorney fee award. In effect, the COCA's majority saw the issue as whether for the purposes of the recovery of attorney fees and costs under § 1101.1, a judgment in favor of a defendant (i.e., a judgment where the plaintiff recovers nothing) should have the same effect as a judgment in favor of the plaintiff but one that is less than the Offer.[5] The majority answered the question

---

3. In the last sentence in the second paragraph on unnumbered page one of its May 2004 Brief in Chief, Associated concedes that "[o]n December 20, 2002, Office Design filed a Second Amended Petition in which it asserted the same causes of action against Associated as previously asserted by [Boston]." We note, however, in count I of the Second Amended Petition $24,828.75 is requested against Associated, rather than the $14,897.25 requested in count I of the First Amended Petition filed by Boston. The parties provide no explanation on appeal for this difference in amounts. Associated does **not** assert on appeal the difference supports a view Office Design was somehow asserting a different cause of action or claim from that initially asserted by Boston. As noted, Associated concedes on appeal the Second Amended Petition asserted the same causes of action as previously asserted by Boston.

4. To the extent Associated relied on any other basis in the trial court for an award of attorney

fees or costs in its favor against Boston, we do not consider any such basis because Associated's appellate briefs rely **solely** on § 1101.1 to support its challenge to the trial court's denial of its motion for attorney fees and costs.

5. At more than one place in its opinion the COCA mistakenly cites to parts of § 1101.1(A), rather than § 1101.1(B), the latter being pertinent to offers of judgment in the type of civil case involved here. Section 1101.1(A) applies to civil actions for the recovery of money in regard to a claim for personal injury, wrongful death, certain discrimination-type cases and workers' compensation employee retaliation-type cases. § 1101.1(A)(1). Section 1101.1(A)'s applicability is also limited to cases where the plaintiff demands in a pleading or in trial proceedings more than $100,000.00 or where defendant makes an offer of judgment more than $100,000.00. § 1101.1(A)(5). Section 1101.1(B) applies to other civil actions for the recovery of money or

in the affirmative and thus, reversed the trial court's order and remanded with direction to the trial court to determine an award of attorney fees to Associated. Boston sought certiorari, which we previously granted.[6]

¶9 We now hold the COCA erred and, like the trial court, are of the view that the "summary judgment" ruling on the real party in interest issue was not a judgment within the contemplation of § 1101.1 and cannot be considered an actual adjudication of the action or claims with respect to the Offer made by Associated to Boston sufficient to invoke the provisions of § 1101.1(B) concerning the recovery of attorney fees and costs. Section 1101.1(B) does not authorize an award of attorney fees or costs unless there has been a judgment entered as to the action or the claim or claims included in the Offer,

something that has not occurred here. The grant of "summary judgment" against Boston cannot be deemed a judgment sufficient to invoke the provisions of § 1101.1(B) because it was based **solely** on a determination Boston was not the real party in interest and the suit against Associated was allowed to continue through Office Design's intervention and, in effect, its substitution as the real party in interest plaintiff to assert the causes of action or claims against Associated.[7]

## ANALYSIS

¶10 The focus of this appeal involves legal questions concerning the meaning of two legislative enactments, § 1101.1(B) and § 2017(A), and the interplay of the two statutes in the circumstances of this case. Involving questions of law relating to statutory

---

property other than those specified in § 1101.1(A)(1) and the $100,000.00 limitation of § 1101.1(A)(5) does not apply to the civil actions covered by § 1101.1(B). Adams, *Recent Developments in Oklahoma Law—Civil Procedure*, 31 Tulsa L.J. 753, 755 (1996). Also, we note that § 1101.1 was enacted in 1995 as part of the Tort Reform Law. Adams, *Recent Developments in Oklahoma Law—Civil Procedure*, 31 Tulsa L.J. at 754; 1995 Okla.Sess.Laws, Ch. 287, § 1. Obviously, however, even though § 1101.1 was passed as part of the Tort Reform Law in 1995, § 1101.1(B) is applicable to the type of case involved here, which, of course, is a breach of contract-type case, not a tort action.

6. The certiorari petition filed with this Court in May 2005 was purportedly filed on behalf of **both** Boston **and** Office Design. In its May 2005 answer to the petition Associated asserts Office Design has no standing to seek certiorari, pointing out that it, Associated, did not seek attorney fees and costs from Office Design, but only from Boston. The appellate record shows Associated did **not** seek attorney fees and costs from Office Design. Nor do we read anything in the COCA's opinion that could be taken to mean the COCA decided that Associated, on remand, would have had some right to recover attorney fees or costs from Office Design. Accordingly, we fail to understand how Office Design could be considered aggrieved by the COCA's decision such that Office Design would have standing to challenge that decision or why the May 2005 certiorari petition was filed on behalf of both Boston and Office Design.

7. In view of our determination the "summary judgment" ruling on the real party in interest issue was not an actual adjudication of the action or claims asserted against Associated and cannot be considered a judgment sufficient to invoke the

attorney fee and cost provisions of § 1101.1(B), we need not decide here the issue the COCA's majority, in effect, considered determinative, to wit: whether, for the purpose of triggering the attorney fee and cost provisions of § 1101.1, a judgment in favor of the defendant (i.e., a judgment where the plaintiff recovers nothing) has the same effect as a judgment in favor of the plaintiff but one that is less than the offer of judgment. We need not decide the issue because even if we agreed with the COCA's general conclusion that a defendant's judgment would normally be sufficient to invoke the provisions of § 1101.1, Associated would still not be entitled to attorney fees or costs under § 1101.1(B) in the circumstances of this case. Thus, a decision as to whether an actual defendant's judgment after a trial on the merits or a summary judgment in favor of a defendant that could be considered a final adjudication in respect to the actual action or the claim or claims included in the offer of judgment would trigger the cost and attorney fee provisions of § 1101.1(B)(3) will have to await another day in a matter where the case's circumstances necessitate determination of the question. We also note that the trial judge did not deem it necessary to decide the issue as delineated by the COCA even though Associated, as part of its argument below, in effect, asserted the position ultimately viewed as determinative by the COCA's majority. Finally, we note that more than one published decision of the Court of Civil Appeals has applied the attorney fee and cost provisions of § 1101.1 in the situation where there was a defendant's verdict/judgment after a trial on the merits. See e.g., *Hopkins v. Byrd*, 2006 OK CIV APP 132, 146 P.3d 864; *Fuller v. Pacheco*, 2001 OK CIV APP 39, 21 P.3d 74. However, in neither case does it appear the losing plaintiffs contested an attorney fee award to the winning defendants on that basis.

interpretation, the appropriate appellate standard of review is de novo, "i.e., a non-deferential, plenary and independent review of the trial court's legal ruling[s]." *Fulsom v. Fulsom*, 2003 OK 96, ¶ 2, 81 P.3d 652, 654, citing *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 8 and n. 5, 33 P.3d 302, 305 and n. 5.

 ¶ 11 We also recognize the following general rules concerning statutory interpretation. When called on to determine the meaning of a statute, a court's primary goal is to ascertain and then follow the intention of the Legislature. *See TRW/Reda Pump v. Brewington*, *1992 OK 31, 829 P.2d 15*, 20. Legislative intent is ascertained by reviewing the whole act in light of its general purpose and object. *Id. Fulsom* further delineated certain well recognized principles concerning statutory interpretation. *Fulsom* states:

> The plain meaning of a statute's language is conclusive except in the rare case when literal construction would produce a result demonstrably at odds with legislative intent. Also, a court is duty-bound to give effect to legislative acts, not to amend, repeal or circumvent them. A universally recognized principle in cases when a court is called on to interpret legislative enactments is that the court is without authority to rewrite a statute merely because the legislation does not comport with the court's conception of prudent public policy.

*Fulsom, 2003 OK 96, ¶ 7, 81 P.3d at 655.* (citations omitted).

¶ 12 *Fulsom* also set out salient general rules regarding the recovery of attorney fees and statutory interpretation of enactments asserted to support an attorney fee allowance. In *Fulsom* the following is found:

> This Court stated the following in *State ex rel. Tal v. City of Oklahoma City*, 2002 OK 97, ¶ 16, 61 P.3d 234, 243, concerning the well-known American Rule as to the recovery of attorney fees in litigation:
>
> Oklahoma follows the American Rule.... The Rule is generally that each litigant pays for their own legal representation and our courts are without authority to assess attorney fees in the absence of a specific statute or con-

tract allowing for their recovery. Exceptions to the Rule are narrowly defined and carved out with great caution because it is understood liberality of attorney fee awards against the non-prevailing party has a chilling effect on our open access to courts guarantee. [Citations omitted.]

> Oklahoma jurisprudence, thus, recognizes that attorney fee statutes are strictly applied because to do otherwise holds out the real possibility of chilling access to the courts. For an award of attorney fees to be authorized under a particular statute the authorization must be found within the strict confines of the involved statute. Further, if the involved attorney fee statute requires interpretation it may be read in context with other parts of the statute and in light of the law in effect at the time of its enactment.

*Fulsom, 2003 OK 96, ¶ 8, 81 P.3d at 655.* (citations omitted).

 ¶ 13 Contrasted with the recognized purpose or rationale behind our jurisprudence following the American Rule are the general policy reasons supporting the recovery of attorney fees and costs, to wit: the encouragement of settlement and discouragement of the bringing of frivolous claims. *Hicks v. Lloyd's General Ins. Agency, Inc.*, 1988 OK 97, 763 P.2d 85, 86. "These considerations recognize the limited availability of judicial resources and seek to penalize those [who] unnecessarily waste them." *Id.* It is also generally recognized that the purpose of offer of judgment statutes "is to encourage judgments without protracted litigation" by "provid[ing] additional incentives to encourage a plaintiff to accept a defendant's offer to confess judgment" and to encourage a defendant "to offer an early confession of judgment [to] avoid further increases in costs which may be incurred [for] trial preparation." *See Dulan v. Johnston, 1984 OK 44, 687 P.2d 1045*, 1047 (construing 12 O.S.2001, § 1101, an offer of judgment statute allowing the recovery of costs in certain situations); see also *Hopkins v. Byrd*, 2006 OK CIV APP 132, ¶ 7, 146 P.3d 864, 866 (citing and quoting *Dulan v. Johnston* and

opining that purpose of § 1101.1 is the same as § 1101).[8]

¶ 14 Title 12 O.S.Supp.2006, § 1101.1 (B)(1) and (3) provide:

**B. Other actions.**

1. After a civil action is brought for the recovery of money or property in an action other than for personal injury, wrongful death or pursuant to Chapter 21 of Title 25 or Section 5 of Title 85 of the Oklahoma Statutes, any defendant may file with the court, at any time more than ten (10) days prior to trial, an offer of judgment for a sum certain to any plaintiff with respect to the action or any claim or claims asserted in the action. An offer of judgment shall be deemed to include any costs and attorney fees otherwise recoverable unless it expressly provides otherwise. If an offer of judgment is filed, the plaintiff or plaintiffs to whom the offer of judgment is made shall, within ten (10) days, file:

a. a written acceptance or rejection of the offer, or

b. a counteroffer of judgment, as described in paragraph

2 of this subsection.

If a plaintiff fails to file a timely response, the offer of judgment shall be deemed rejected. The fact an offer of judgment is made but not accepted or is deemed rejected does not preclude subsequent timely offers of judgment.

. . . .

3. If no offer of judgment or counteroffer of judgment is accepted and the judgment awarded the plaintiff is less than one or more offers of judgment, the defendant shall be entitled to reasonable litigation costs and reasonable attorney fees incurred by the defendant with respect to the action or the claim or claims included in the offer of judgment from and after the date of the first offer of judgment which is greater than the judgment until the date of the judgment. Such costs and fees may be offset from the judgment entered against the offering defendant.[9]

¶ 15 In our view the plain language of § 1101.1(B)(3) provides that there must be some type of final adjudication, i.e., conclusion, to the action or the claim or claims **included in the offer of judgment** for an attorney fee and cost recovery to be triggered. Here, the "summary judgment" relied on by Associated cannot be considered a final adjudication or conclusion of the action or the claims included in Associated's Offer to Boston. This is so for two main reasons. One, by obtaining the "summary judgment" ruling Associated itself, in effect, convinced the trial court by its real party in interest objection that the claims asserted against it were not the claims of Boston but were the claims of Office Design. Two, the very same claims asserted against Associated by Boston were allowed to go forward through Office Design's intervention in the case and, in effect, its substitution for Boston as the real

8. Title 12 O.S.2001, § 1101 provides:

The defendant, in an action for the recovery of money only, may, at any time before the trial, serve upon the plaintiff or his attorney an offer, in writing, to allow judgment to be taken against him for the sum specified therein. If the plaintiff accept the offer and give notice thereof to the defendant or his attorney, within five days after the offer was served, the offer, and an affidavit that the notice of acceptance was delivered within the time limited, may be filed by the plaintiff, or the defendant may file the acceptance, with a copy of the offer, verified by affidavit; and in either case, the offer and acceptance shall be noted in the journal, and judgment shall be rendered accordingly. If the notice of acceptance be not given in the period limited, the offer shall

be deemed withdrawn, and shall not be given in evidence or mentioned on the trial. If the plaintiff fails to obtain judgment for more than was offered by the defendant, he shall pay the defendant's costs from the time of the offer.

In *Bullard v. Grisham Const. Co.*, 1983 OK 21, 660 P.2d 1045, 1047, the Court recognized that § 1101 does not allow for the recovery of attorney fees.

9. Section 1101.1 was last amended in 2002, effective November 1, 2002. 2002 Okla.Sess.Laws, Ch. 468, § 7 and § 81. Though the Offer of Judgment by Associated was made in March 2002 (i.e., prior to the effective date of the 2002 amendments), we cite to the current version of § 1101.1(B), as the 2002 amendments do not influence our disposition in this case.

party interest to assert those claims against Associated.[10]

■ ¶ 16 Section 2017(A) provides:

**A. REAL PARTY IN INTEREST. Every action shall be prosecuted in the name of the real party in interest.** An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought. **No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.**

(emphasis added).

The purpose of § 2017(A) was explained in *Weeks v. Cessna Aircraft Co.,* 1994 OK CIV APP 171, 895 P.2d 731, 733 (Approved for Publication by Order of Supreme Court), where the following is found:

Substitution of plaintiffs has been liberally granted in Oklahoma where mistake or inadvertent error has caused the improper party to file an action. *Saint Paul Fire and Marine Insurance Co. v. Spann,* 355 P.2d 567 (Okla.1960). In Saint Paul Fire, the court explained that " 'courts should be inclined to disregard subtleties and answer technical objections to the sufficiency of a pleading in an honest effort to determine the real issues on their merits, and to try and do substantial justice to the litigants before them.' " Id. at 570 (quoting *Mostenbocker v. Shawnee Gas & Elec. Co.,* 49 Okla. 304, 152 P. 82, 85 (1915)). Furthermore, " 'where there is no change

in the cause of action and the party substituted bears some relation of interest to the original party and to the action, the substitution may be allowed, as where the substitution is of one having the legal right to sue instead of one improperly named as plaintiff.' " *Id.* at 571 (quoting *Dierks v. Walsh,* 196 Okla. 372, 165 P.2d 354 (1946)).

Oklahoma's interpretation of section 2017 is fully consistent with the construction commonly placed on Federal Rule of Civil Procedure 17, from which section 2017 derives. The advisory committee notes to the 1966 amendment to Rule 17 describe the rationale for permitting liberal substitution of the plaintiff for the real party in interest in actions brought under the Federal Rules.

The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, substitution, etc., *is added simply in the interests of justice.* (Emphasis added).

F.R.C.P. 17, Advisory Committee Notes, 1966 Amendment. The committee notes stress that the provision "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Id.* The committee explains that "the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover." *Id.* Where the defendant's interests are protected, substitution should be allowed.

Thus, the purpose of the real party in interest requirement from the defendant's perspective is to insure that the defendant will not be later subjected to a second suit based on the same cause or claim. *See Joplin v. Ely,* 1961 OK 244, 365 P.2d 735, 736 (referring to predecessor real party in interest

---

**10.** We realize that one or more entries on the certified appearance docket we have been provided in this appeal seem to indicate that Office Design was added to the litigation as an additional party plaintiff. However, our review of the record presented in this appeal convinces us that the substantive and practical reality of the situation was that Office Design was, in effect, substituted for Boston as the real party in interest to assert the causes of action or claims initially brought by Boston.

statute to § 2017); *see also Watford v. West,* 2003 OK 84, 78 P.3d 946. In other words, from a defendant's perspective the real party in interest requirement is to protect the defendant from a multiplicity of suits based on the same claim or claims.

¶ 17 Here, in essence, Associated persuaded the trial court that Office Design was the party having the actual right to recover (if entitlement to recovery was ultimately shown at all), not Boston, and the real party in interest purpose from Associated's perspective was served. When Office Design was allowed to intervene in the lawsuit, Office Design was, in effect, substituted in the place of Boston to litigate the same action and claims against Associated as had been initially brought by Boston. Although the "summary judgment" order of the trial judge handling the case prior to the judge that ruled on Associated's motion for attorney fees and costs used the unfortunate language that Boston's causes of action against Associated were dismissed with prejudice on the basis that Boston was not the real party in interest, the substantive effect of the "summary judgment" ruling was that Boston was dismissed as a party to the lawsuit and Office Design, once it decided to file a Second Amended Petition asserting the same claims, was substituted for Boston as the real party in interest plaintiff to carry forward the **same action and the same claims** as initially brought against Associated by Boston.

■ ¶ 18 By virtue of the last phrase of § 2017(A) the substitution of Office Design had "the same effect as if the action had been commenced in the name of the real party in interest." Normally, § 2017(A)'s general purpose from the plaintiff's perspective, "is to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. Thus its main thrust is to allow correction in parties after the statute of limitation has run, despite the valid objection that the original action was not brought by the real party in interest." *Watford, 2003 OK 84,* ¶ 11, 78 P.3d at 949 (quoting 3A *Moore's Federal Practice P,* 17.15–1, at 17–182 (2nd ed.1979))(emphasis deleted). Although no statute of limitation issue is involved in this case, the plain words of § 2017(A) are that a substitution, as practically occurred here, had the effect of placing Office Design in the shoes of Boston and it was as if the action initiated by Boston had, in fact, instead been initiated by Office Design. Therefore, the "summary judgment" ruling on the real party in interest issue, of course, did not bring an end to the litigation as a whole **nor did it conclude the action or claims brought against Associated that were the subject of its Offer.**

¶ 19 In the case of *Triad Bank, N.A. v. A & A Materials Co., Inc.,* 2002 OK CIV APP 3, 39 P.3d 820, the COCA, Division III (the same division that reversed the trial court order involved here) basically recognized that an essential element or condition precedent to recovery of attorney fees and costs under § 1101.1(B) was an adjudication of the claim that was the subject of the offer of judgment. *See Triad Bank, N.A.,* 2002 OK CIV APP 3, ¶ 5, 39 P.3d at 822. Without such an adjudication no determination can be made as to whether there was a judgment less than the offer. *See id.* Although *Triad Bank, N.A.* involved an unaccepted offer of judgment in regard to a counterclaim and, of course, did not involve a real party in interest substitution like the instant case, the principle espoused therein is applicable here. In the instant case the claims that were the subject of the offer of judgment were dismissed without prejudice when Office Design (purportedly joined by Boston) dismissed the action without prejudice prior to and without · an actual adjudication of the claims. Thus, a required condition to application of § 1101.1(B)(3) is missing, i.e., a judgment actually adjudicating the action or claim or claims that were the subject of Associated's Offer. We reject Associated's argument that the real party in interest "summary judgment" ruling was an adjudication of the claim or claims asserted by Boston sufficient to invoke the provisions of § 1101.1. The simple fact is that the ruling on the real party in interest defense raised by Associated did not end the lawsuit nor did it render an ultimate determination as to Associated's liability on the claims asserted against it, as was recog-

nized by the trial court in denying Associated's motion for attorney fees and costs.[11]

¶ 20 For us to rule here that the "summary judgment" ruling on the real party in interest issue was a judgment within the legislative contemplation of § 1101.1(B)(3) would be an act of stretching that provision beyond its limits with no basis but unwarranted and improper judicial fiat. It would involve a broad, rather than strict application of the provision, and, thus, would be a ruling contrary to our generally recognized jurisprudence in regard to the interpretation of attorney fee statutes. This we will not do. We finally note we have, of course, reviewed the entirety of § 1101.1 and find nothing therein to alter our view as to the correctness of the trial court's decision to deny Associated attorney fees and costs against Boston under that provision or to convince us that the Legislature intended for § 1101.1(B)(3) to apply in the situation or circumstances shown by the record presented to us in this case.

## CONCLUSION

¶ 21 For the purposes of the recovery of attorney fees and costs under § 1101.1(B)(3), the "summary judgment" ruling of the trial court on the real party in interest issue cannot be considered an actual adjudication of the action or the claim or claims brought by Boston against Associated. Instead, the action and the claims were allowed to go forward and to continue through Office Design's intervention and, in effect, its substitution for Boston as the real party in interest to litigate the action and claims against Associated. Office Design dismissed the action without prejudice and, thus, neither the action or claims have to this point been the subject of a final and actual adjudication sufficient to invoke the provisions of § 1101.1(B)(3). In that no judgment has yet adjudicated the action or claim or claims that were the subject of Associated's Offer of Judgment, the trial court was correct to deny Associated's motion for attorney fees and costs and the COCA erred in reversing that order and remanding for a determination of attorney fees to Associated.

¶ 22 For the reasons set forth in this opinion, the COCA's opinion is **VACATED** and the trial court Order denying Associated's motion for attorney fees and costs against Boston is **AFFIRMED**.

¶ 23 EDMONDSON, V.C.J., LAVENDER, HARGRAVE, OPALA, KAUGER, WATT, TAYLOR and COLBERT, JJ., concur.

¶ 24 WINCHESTER, C.J., concurs in result.

---

11. We note that Associated's argument(s) concerning whether the trial court's "summary judgment" ruling on the real party in interest issue became a final appealable order once Office Design (purportedly joined by Boston) dismissed the action without prejudice, do not answer the question of whether that ruling was sufficient to trigger the attorney fee and cost provisions of § 1101.1(B). It is the effect of that ruling within the context of the meaning of § 1101.1(B) and, in the circumstances of this case, § 1101.1(B)'s interplay with 12 O.S.2001, § 2017 (A) which we have delineated in this opinion, that answers the attorney fee and cost question, not simply whether the "summary judgment" ruling on the real party in interest issue became a final appealable order upon the filing of the dismissal without prejudice. We also note, the question of whether Office Design would be responsible pursuant to § 1101.1(B)(3) for attorney fees and costs to Associated from the date of Associated's Offer to Boston under any potential circumstances should the claims involved here be actually adjudicated in the future, is not a question before this Court at this time.

Further, we have reviewed the cases cited by Associated from other jurisdictions concerning the pertinent enactments in those jurisdictions as to the recovery of attorney fees and/or costs and fact situations involving multiple plaintiffs and/or unapportioned offers of judgment, compromise or settlement. We conclude those cases are not helpful to reach an appropriate disposition in the instant case. None of them dealt with the situation, as here, where during the litigation an intervening plaintiff was, in effect, substituted as the real party in interest plaintiff for the originally named plaintiff to carry forward the same claims that were the subject of the offer of judgment. For the same reason, we do not find two cases from our own Court of Civil Appeals concerning § 1101.1, multiple plaintiffs and unapportioned offers of judgment helpful in reaching a correct disposition here. The two cases are *Medlock v. Admiral Safe Co., Inc.,* 2005 OK CIV APP 72, 122 P.3d 883 and *Haddock v. Woodland Park Home, Inc.,* 2004 OK CIV APP 42, 90 P.3d 594.

OPALA, J., with whom KAUGER, J., joins, concurring.

¶ 1 This controversy was spawned by misused labels. When Associated Resources, Inc., defendant below, asked for "summary judgment" it meant to secure the action's dismissal for want of a proper party plaintiff. The so-called "summary judgment" that was entered in this cause **was in law** but an order dismissing the claim because the plaintiff was not the real party in interest to bring the suit. The provisions of 12 O.S.2001 § 683 (3) authorize an action's dismissal "for want of necessary parties". The judicial action dispositive of this suit was hence not a "summary judgment" but rather a § 683(3) **order of dismissal.**[1]

¶ 2 Summary judgment is a "judgment on the merits".[2] See statutory definition of judgment in 12 O.S.2001 § 681. It disposes of "the real or substantial grounds of action or defense **as distinguished from matters of practice, procedure or form.**" (emphasis supplied) *Flick v. Crouch*, 1967 OK 131, 434 P.2d 256, 261. The term judgment connotes a final decision with a res judicata effect. When applied to a § 683(3) dismissal order the use of the term "judgment" is a misnomer. *Reams v. Tulsa Cable Television, Inc.*, 1979 OK 171, 604 P.2d 373, 375; *Points v. Oklahoma Pub. Co.*, 1983 OK 62, 672 P.2d 1146. Because the invoked authority for allowance of counsel fee, the provisions of 12 O.S.2001 § 1101.1, is inapplicable to § 683(3) dismissal orders, the trial court's denial of an award must be affirmed.

---

1. 12 O.S.2001 § 1116; *Foreman v. Riley*, 1923 OK 2, 211 P. 495, 496.

2. "A judgment must not only determine the rights of the parties in an action, **but must conclude all further inquiry into the issues joined by** the pleadings and leave nothing further to be done except carry it into execution." (emphasis supplied) *Foreman v. Riley*, supra note 1; *Wells v. Shriver*, 1921 OK 122, 81 Okl. 108, 197 P. 460.